UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TARA R. BLANTON, | ) | CASE NO. 3:18CV1761 |
| | ) | |
| Plaintiff, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL[1], | ) | |
| COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

Plaintiff Tara Blanton ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on November 19, 2018, Plaintiff asserts that the administrative law judge ("ALJ") failed to give good reasons for not adopting the opinions of both of her treating physicians, Dr. Singh and Dr. Desai. ECF Dkt. #12. On February 15, 2019, Defendant filed a brief on the merits. ECF Dkt. #16. Plaintiff subsequently filed a reply to Defendant's brief on March 1, 2019. ECF Dkt. #17.

For the following reasons, the undersigned recommends that the Court VACATE the ALJ's decision and REMAND this case for further proceedings consistent with this Report and Recommendation.

I.      FACTUAL AND PROCEDURAL HISTORY

A.      Initial ALJ Decision

On June 5, 2012, Plaintiff protectively filed an application for SSI alleging disability beginning June 4, 2012 due to depression, fibromyalgia, mental break down, migraines, pain all over,

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

asthma, right knee issues, nerves, lower pain issues, and acid reflux. ECF Dkt. #11 ("Tr.")[2] at 58, 69, 134, 153, 156. Plaintiff's application was denied initially on September 4, 2012 and upon reconsideration on November 28, 2012. *Id.* at 58-68, 70-82, 84, 90. On January 7, 2013, Plaintiff requested an administrative hearing. *Id.* at 92-94. Additionally, on August 28, 2013, Plaintiff protectively filed an application for DIB with the same alleged onset date of June 4, 2012. *Id.* at 151, 153.

On January 29, 2014, a hearing was held before an ALJ in which Plaintiff, with counsel, and a vocational expert ("VE") testified. *Id.* at 32-57. The ALJ issued his decision on April 23, 2014, finding Plaintiff not disabled and denying her applications for DIB and SSI. *Id.* at 6-23. Plaintiff requested a review of the hearing decision, and on July 19, 2015, the Appeals Council denied review. *Id.* at 1-5, 30-31.

On September 11, 2015, Plaintiff filed suit, requesting judicial review of the final decision denying her applications for DIB and SSI. *Blanton v. Comm'r of Soc. Sec.*, No. 3:15CV1864 ("*Blanton I*"), at 689-94.[3] After the case was fully briefed, a magistrate judge issued a Report and Recommendation on June 16, 2016 recommending "that the final decision of the Commissioner be vacated and that the case be remanded." *Blanton I*, at 712-36. In his report, the magistrate judge found that the ALJ failed to include certain medical records as exhibits to the record and the ALJ violated the treating physician rule by failing to articulate "good reasons" for failing to assign controlling weight to the opinions of Plaintiff's treating physicians, Drs. Singh and Desai. *Id.* The Court accepted the magistrate judge's decision and vacated and remanded this matter to Defendant for further proceedings. *Id.* at 710-11.

### B.    Subsequent ALJ Decision

---

[2] All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

[3] All citations to the transcript referring to Plaintiff's previous case, *Blanton v. Comm'r of Soc. Sec.*, No. 3:15CV1864, will be prefaced with "*Blanton I*" and the transcript .PDF page number.

Following the August 15, 2016 remand of this matter to the ALJ, a second hearing was held on April 26, 2017. Tr. at 617-35. On May 17, 2017, the ALJ issued a decision, again finding Plaintiff not disabled and denying Plaintiff's applications for DIB and SSI for the period of June 4, 2012 through the date of the second decision. *Id.* at 590-606. In the section of his decision regarding jurisdiction and procedural history, the ALJ acknowledged that the District Court remanded the case "to review the opinions of Dr. Singh and Dr. Desai and provide [sic] good, articulated reasons for accepting or rejecting the opinions." Tr. at 593.

On July 30, 2018, Plaintiff filed the instant suit seeking review of the ALJ's second decision. ECF Dkt. #1. On October 18, 2018, Defendant filed an answer. ECF Dkt. #10. Plaintiff filed a brief on the merits on November 19, 2018. ECF Dkt. #12. On February 15, 2019, Defendant filed a merits brief. ECF Dkt. #16. Plaintiff filed a reply brief on March 1, 2019. ECF Dkt. #17.

## II. MEDICAL AND TESTIMONIAL EVIDENCE

### A.    Medical Evidence

Since Plaintiff's arguments are limited to the treating physician rule as it pertains to Drs. Desai and Singh, the undersigned will limit review of the medical evidence to those two treating physicians and related visits. Plaintiff's alleged disability onset date is June 4, 2012. Tr. at 134, 151.

#### i. Dr. Singh

Plaintiff's medical records suggest she has been a patient of Dr. Paraminder B. Singh, M.D., since approximately 2002. Tr. at 325. From 2002 to 2012, Plaintiff's medical records from Dr. Singh (as well as Dr. Muhammad Khan, M.D.) regularly document her history of migraine headaches. Tr. at 265-66, 272-76, 278, 283-85, 290, 295, 301, 304-05, 309, 311-13, 320-22, 324-25, 504, 507, 512, 525, 529, 537.

In February 2010, Plaintiff presented to an emergency department for an accident in which she slipped on ice at a gas station, injuring her left hip and left knee. *Id.* 212-16. Plaintiff presented with Dr. Singh to get an MRI on her left knee and for follow up treatment. *Id.* at 217-19.

In January 2012, Plaintiff presented to the emergency department complaining of migraine headaches. *Id.* at 225-30. She was discharged the same day in stable condition. *Id.* at 225. In

September, October, and December 2012, Plaintiff presented to Dr. Singh with complaints of back pain, anxiety, myalgias (noted as starting 5 years prior), incapacitating and frequent headaches (noted as starting 10+ years prior with episodes lasting 3-4 days), depression (noted as starting 1 year prior), and obesity. *Id.* at 504-05, 507-09, 515.

On May 28, 2013, Plaintiff presented to Dr. Singh with issues on swallowing and a sore throat as well as back pain and myalgias. *Id.* at 510. On June 13, 2013, Plaintiff presented to Dr. Singh for a follow up visit after being in a car accident. *Id.* at 512. Plaintiff had pain in her left shoulder and left knee, neck pain, and headache symptoms. *Id.* Dr. Singh prescribed Vicodin and instructed Plaintiff to get an MRI and X-ray. *Id.* at 513. Dr. Singh also recommended physical therapy. *Id.* at 511. Plaintiff continued presenting with similar complaints pain, myalgias, depression, and headaches throughout 2013. *Id.* at 429-30, 432-34, 515-32. Also, beginning around December 2013, Dr. Singh treated Plaintiff for degenerative disc disease by prescribing her Vicodin. Tr. at 429-30, 1161-81. However, in December 2014, Plaintiff received an MRI of her lumbar spine, and the results were normal. *Id.* at 2028.

Throughout 2014 and 2015, Plaintiff continued visiting Dr. Singh for the aforementioned symptoms as well as for various complaints of hypertension, shortness of breath, anxiety, asthma, joint pain, dyspnea, back pain, edema, and rashes. Tr. at 977-1080.

On February 25, 2014, Plaintiff presented to Dr. Singh for a follow up visit with complaints of hypertension, anxiety, asthma, joint pain, and a "leaky bladder." Tr. at 977. Subsequently, Dr. Singh referred Plaintiff for a Pulmonary Function Test ("PFT"), which Plaintiff underwent on February 28, 2014. *Id.* at 982-83, 1223-25. Her PFT results indicated that there was no noticeable significant obstruction or restriction, but she had impaired diffusion capacity, which raised suspicions for a pulmonary vascular disease, including emphysema related findings or interstitial lung disease. *Id.* at 1225. The report also noted that Plaintiff has a history of asthma and chronic smoking. *Id.* at 1223, 1225. During a July 28, 2014 visit, Plaintiff stated that her headaches have improved more than 50% since her last hospitalization. *Id.* at 1025.

On March 4, 2015, Plaintiff was hospitalized overnight for chronic obstructive pulmonary disease ("COPD") and breathing problems. *Id.* at 1090. On June 1, 2015, Plaintiff complained of

4

chronic itching, which she described felt like bugs crawling all over her body, and Dr. Singh subsequently refilled her medications. *Id.* at 1119-25. Plaintiff visited an emergency department with complaints of a cough and chest pain during October 2015 and in February, April, May, and July 2016. Tr. at 1548-1675, 1836-72.

On June 2, 2012, Dr. Singh opined about Plaintiff's medical conditions and listed Plaintiff's medical conditions as including myalgia, depression, joint pain in ankle and foot, asthma, malaise, and knee pain. *Id.* at 870-71. Dr. Singh further opined that Plaintiff "has all over pain caused from the myalgia and joint pain," and that she cannot bend, lift, twist, walk for long periods of time, becomes fatigued very easy, and her asthma causes her breathing problems. *Id.* Dr. Singh indicated that Plaintiff could stand or walk for one to two hours and she could carry up to 5 pounds frequently. *Id.* at 871. Dr. Singh concluded that Plaintiff "is completely disabled due to her conditions," and "the pain she suffers from affects her daily living." *Id.*

On June 20, 2013, Dr. Singh completed a physical capacity evaluation and opined that Plaintiff can stand or walk a total of one hour and can sit for a total of two hours in an 8 hour workday. Tr. at 399-400. Dr. Singh also opined that Plaintiff can lift up to 10 pounds rarely and she is likely to have partial or full day unscheduled absences from work occurring 5 or more days per month due to her conditions. *Id.* Dr. Singh remarked that when Plaintiff is under stress, she "falls apart," and explained that Plaintiff cannot concentrate and forgets basic tasks, gets muscle spasms that worsen her pain, gets headaches that occur frequently (at least 2-3 times a day and Plaintiff needs the lights off and to rest), and gets severe depression. *Id.* at 400.

On September 21, 2016, Dr. Singh opined in a letter that Plaintiff is permanently unable to work because she suffers from vulvar cancer, chronic degenerative disc disease, anxiety, chronic pain, myalgia, myositis, and hypertension. Tr. at 1717.

### ii. Dr. Desai

Plaintiff's medical records suggest she has been a patient of Dr. Bipin M. Desai, M.D., since approximately January 2012. *See* Tr. at 252. On January 30, 2012, Plaintiff visited Dr. Desai with the chief complaint of depression. Tr. at 253. After evaluating her, Dr. Desai diagnosed Plaintiff with

major depressive disorder that is recurrent and moderate. *Id.* Dr. Desai prescribed Celexa and instructed her to continue on Xanax. *Id.* at 254. Plaintiff continued seeing Dr. Desai on a monthly basis. *Id.* at 254-58, 377-84, 411-14. In February 2012, Plaintiff reported feeling better although the Celexa made her lethargic. *Id.* at 255. Dr. Desai instructed her to stop Celexa and start Prozac. *Id.* In April 2012, Plaintiff complained that she was feeling depressed, anxious, and irritable following a recent hysterectomy, and Dr. Desai prescribed her Risperdal. *Id.* at 256. In June 2012, Dr. Desai noted that Plaintiff applied for a medical card and SSD. *Id.* at 258. Also during this visit, Dr. Desai diagnosed Plaintiff with another disorder–pain disorder associated with psychological factors and a medical condition. *Id.* In July 2012, Dr. Desai prescribed Plaintiff Abilify and instructed her to stop taking Risperdal. *Id.* at 377. In September 2012, Dr. Desai prescribed her Pristiq and instructed her to stop taking Prozac. *Id.* at 381. In October 2012, Dr. Desai started Plaintiff on Cymbalta and instructed her to stop taking Pristiq. *Id.* at 382-83. In November 2012, Plaintiff reported feeling a little better and that she was coping better with her chronic pain. *Id.* at 384. However, in December 2012, Plaintiff reported that she could not stop crying. *Id.* at 411. Dr. Desai subsequently prescribed her Lexapro, and Plaintiff reported feeling better later that month. *Id.* at 412-13. Shortly thereafter, from December 27, 2012 until January 25, 2013, Plaintiff was hospitalized due to increased depression and having a "mental breakdown." *Id.* at 386-87.

In March, May, and August 2013, Plaintiff reported that she was feeling "pretty good" and was coping with stressors, as well as awaiting her SSD hearing. Tr. at 415, 417, 419. Plaintiff continued seeing Dr. Desai in 2014 through 2016 with visits noting that she reported either feeling good or that she felt anxious, depressed, or tired. *Id.* at 1928-67.

On June 18, 2012, Dr. Desai completed a mental functional capacity assessment and marked Plaintiff as being moderately limited or markedly limited in almost every category. Tr. at 868-69. Additionally, Dr. Desai noted that Plaintiff had major depression that is moderate and recurrent, had pain that is chronic and due to physical and psychological factors, and had low energy. *Id.* at 869.

On August 29, 2013, Dr. Desai filled out a questionnaire as to mental residual functional capacity and marked Plaintiff as being either moderate or marked limitations in each area. Tr. at 402-04, 425-27. Dr. Desai opined that Plaintiff would be likely to have partial or full day unscheduled

absences from work occurring 5 or more days per month due to her diagnosed conditions and/or side effects of medication. *Id.* at 404, 427.

Plaintiff continued seeing Dr. Desai regularly throughout 2014 to 2016, in which she consistently reported feeling "pretty good" and denied using substances or having manic symptoms, hallucinations, delusions, and other symptoms of psychotic process. Tr. at 1928-1967. In June 2016, Plaintiff reported feeling depressed and anxious, but subsequently reported that her depression and anxiety had decreased. *Id.* at 1956, 1958, 1960. In October 2016, she reported feeling very anxious and also reported that she was diagnosed with cancer of the vulva. *Id.* at 1966.

### B. Testimonial Evidence

After the District Court remanded the case back to the ALJ, a second hearing was held on April 26, 2017, in which Plaintiff, with counsel present, and a vocational expert ("VE") testified. Tr. at 617-35. Plaintiff testified that she has not worked at all since the prior hearing on January 29, 2014 and that her fibromyalgia and depression have worsened. *Id.* at 621. She also stated that she was hospitalized for her depression. *Id.* Plaintiff testified that she is still a patient of Dr. Desai[4] and Dr. Singh. *Id.* at 622-23.

Plaintiff testified that her depression and fibromyalgia affects her so that she does not get out of bed everyday, does not bathe every day, and naps a couple of times a day. *Id.* at 625-26. She also stated that she still has headaches that occur about every other day, and she has to "go into [her] dark cave and there's no light and no sound, just peace and quiet, and [she] lay[s] there until it goes away." *Id.* at 626. She further testified that her mother helps her with getting things done. *Id.* at 627.

When asked if she thought she could be able to return to working at a job eight hours a day, five days a week, Plaintiff testified that she would not be able to work due to her fibromyalgia and depression. *Id.* at 627. She also stated that if she had to work, she would probably have a nervous breakdown. *Id.*

---

[4] The transcript misspells Dr. Desai's name as "Dr. Dusi." *See* Tr. at 622.

### III.  **RELEVANT PORTIONS OF THE ALJ'S DECISION**

On April 23, 2014, the ALJ issued his initial decision finding that Plaintiff was not disabled. Tr. at 6-23. The ALJ stated that Plaintiff had not engaged in substantial gainful activity since June 4, 2012, the alleged onset date. *Id.* at 11. Continuing, the ALJ determined that Plaintiff had the following severe impairments: mild osteoarthritis of the right knee; degenerative disc disease of the lumbosacral spine; obesity; an anxiety disorder, not otherwise specified; and a depressive disorder, not otherwise specified. *Id.* The ALJ then indicated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 14.

After consideration of the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) with the following additional limitations: can frequently use her right lower extremity for pushing and pulling of leg controls; can frequently kneel, crawl, and climb ladders, ropes, and scaffolding; retains the capacity for low stress work, defined as simple, routine, and repetitive tasks involving goal-based production that is measured by end result versus pace of work; work that involves only occasional changes in work setting; work that involves only occasional interaction with supervisors, coworkers, and the public; and  work that allows for five percent of the work day to be spent off task. *Id.* at 17-18.

Specifically with regard to the opinions of Plaintiff's treating physicians, the ALJ stated the following:

> The June 20, 2013 opinions of Dr. Singh (citing Tr. at 399-401, 532, 542-43) have been considered but cannot be assigned any significant weight because Dr. Singh's own report fails to substantiate the type of significant clinical and laboratory abnormalities that one would expect if the claimant were in fact disabled, and Dr. Singh does not specifically address this weakness in his opinion. In this regard, it appears that Dr. Singh heavily relied on the subjective reports of symptoms and limitations provided by the claimant, and that he uncritically accepted as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of the claimant's subjective complaints.
>
> The August 29, 2013, opinion of Dr. Desai (citing Tr. at 402-08, 425-28) has been considered but cannot be assigned any significant weight because his opinion is inconsistent with and unsubstantiated by his own reported clinical examination finding (citing Tr. at 252-58, 376-84). In fact, at every[sic] examination of the claimant, she

8

was classified by Dr. Desai as having only "moderate" depression and a "moderate" major depressive disorder (citing *id.*), which is inconsistent with Dr. Desai's August 29, 2013 mental residual functional capacity assessment. Moreover, all GAF ratings assigned to the claimant have fallen within the range of only moderate, and not severe as would be expected based on the limitations set forth in Dr. Desai's August 29, 2013 opinion. It should be noted that the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality that should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of records, as in the current case.

Tr. at 20-21.

The ALJ then stated that Plaintiff is unable to perform any past relevant work, was a younger individual on the alleged disability onset date, had at least a high school education, and could communicate in English. *Id.* at 21. Next, the ALJ indicated that the transferability of jobs skill was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff was "not disabled," whether or not she has transferable job skills. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 4, 2012. *Id.* at 23.

On May 12, 2014, Plaintiff requested review of the ALJ's decision for failing to provide good reasons for assigning no significant weight to the two treating physicians, Dr. Singh and Dr. Desai. Tr. at 30-31. The Appeals Council denied Plaintiff's request for review. *Id.* at 1, 684. Plaintiff subsequently filed a complaint in the United States District Court. *Id.* at 689-709.

On August 15, 2016, the District Court adopted the report and recommendation of the Magistrate Judge and vacated and remanded the case. *Id.* at 710-11. The Court held that the ALJ erred in omitting some of the Plaintiff's medical records as exhibits and that those records should have been considered as part of the evidence of her disability. *Id.* at 729. The Court found it unnecessary to determine whether this constituted harmless error because it subsequently found that the ALJ did not follow the treating physician rule because he failed to articulate good reasons for failing to assign

controlling weight to the opinion of Plaintiff's treating physicians, Dr. Singh and Dr. Desai. *Id.* at 729, 733-35.

Upon remand, the ALJ held a second hearing on April 26, 2017, and the ALJ issued a second decision on May 17, 2017, finding Plaintiff not disabled from June 4, 2012, within the meaning of the Social Security Act. Tr. at 617, 590-606. The ALJ stated that Plaintiff had not engaged in substantial gainful activity since June 4, 2012, the alleged onset date. *Id.* at 595. The ALJ determined that Plaintiff had the following severe impairments: fibromyalgia; migraine headaches; right knee osteoarthritis; chronic obstructive pulmonary disease ("COPD"); degenerative disc disease of the lumbar spine; cervical spondylosis; osteoarthritis of the knees; obesity; anxiety disorder, not otherwise specified; and depressive disorder, not otherwise specified. *Id.* The ALJ then indicated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 596.

After consideration of the record, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except that she can frequently operate foot controls with the right lower extremity; can frequently climb ladders, ropes, or scaffolds; can frequently kneel and crawl; can have occasional exposure to irritants, such as fumes, odors, dust, and gases; is limited to simple, routine, and repetitive tasks with goal-based production work measured by end result, not pace work; will be off task 5% of the workday; can handle only occasional changes in the work setting; can have occasional interaction with the public, coworkers, and supervisors. *Id.* at 597-98.

The ALJ then stated that Plaintiff is unable to perform any past relevant work, was a younger individual on the alleged disability onset date, had at least a high school education, and could communicate in English. *Id.* at 604-05. Next, the ALJ indicated that the transferability of jobs skill was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff was "not disabled," whether or not she has transferable job skills. *Id.* at 605. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could

10

perform. *Id.* For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 4, 2012. *Id.* at 606.

## IV.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the

11

Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    LAW AND ANALYSIS

### A.    TREATING PHYSICIAN RULE

Plaintiff asserts that the ALJ repeated the same error as found by the District Court, as he violated the treating physician rule by failing to give good reasons for discrediting the opinions of Dr. Singh, her treating physician, and Dr. Desai, her treating psychiatrist. ECF Dkt. #12 at 7.

12

An ALJ must give controlling weight to the opinion of a treating source[5] if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2)[6]; *Price v. Comm'r Soc. Sec. Admin.*, 342 Fed.Appx. 172, 175-76 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

If an ALJ declines to give controlling weight to the opinion of a treating source, he must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 404.1527(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544, citing 20 C.F.R. § 404.1527(c); *see also* 20 C.F.R. §416.927(c). Although an ALJ must "consider" all of the factors in 20 C.F.R. § 404.1527(c) and must "apply" the factors listed in 20 C.F.R. § 404.1527(c)(2), including its subsections, through (c)(6) to determine the weight to give that opinion, he is not required to discuss every factor in his decision as long as he provides "good reasons." 20 C.F.R. § 404.1527(c)(2); Social Security Rule ("SSR") 96-2p, 1996 WL 374188, at \*5 (1996)*; Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.") (internal citation omitted). Under the "good reasons" rule, the ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

---

[5] The undersigned notes that the SSA has changed the treating physician rule effective March 27, 2017. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

[6] Given that Plaintiff filed for SSI on June 5, 2012 and DIB on August 28, 2013, two earlier versions of this section apply. The undersigned notes that the relevant subsection (c) and its subparts are the same. Additionally, the undersigned notes a parallel section exists, which has the equally corresponding versions, 20 C.F.R. § 416.927(c).

reasons for that weight." SSR 96-2p, at *5. This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

### B.    OPINION OF TREATING PSYCHIATRIST, DR. DESAI

Plaintiff asserts that the ALJ failed to provide good reasons for not affording controlling weight to Dr. Desai's opinions. ECF Dkt. #12 at 8-12. Specifically, Plaintiff reasons that (1) the

Plaintiff's comments about feeling "pretty good" should be taken in context with the rest of her treatment notes; (2) Dr. Desai's notes are consistent with other mental health records; (3) the ALJ repeated the same mistake in his analysis of Dr. Desai's use of the term "moderate"; and (4) the ALJ failed to address deficiencies noted by the prior Magistrate Judge's Report and Recommendation, including no discussion about the length of the treatment, frequency of the treatment relationship, or the consistency of the opinion with the record as a whole. *Id.* at 9-12.

The undersigned recommends the Court find that the ALJ violated the treating physician rule because he did not provide good reasons for affording less than controlling weight to Dr. Desai's opinions. In relevant part, the ALJ stated the following:

> Dr. Desai completed a mental functional capacity assessment in June 2012 that the claimant was markedly limited in carrying out detailed instructions, maintaining attention, maintaining a normal schedule, and accepting instructions/responding appropriately to others (citing Tr. at 868-69). Dr. Desai then completed a mental source statement in June 2013 that the claimant would be markedly limited in her ability to accept instructions; respond appropriately to others; perform work tasks; and carry out instructions (citing Tr. at 402-08, 425-28). The undersigned gives little weight to the opinions of Dr. Desai, as they are inconsistent with the record, including his own treatment record. Dr. Desai indicated on multiple occasions that the claimant suffered from only moderate depression. Dr. Desai assessed the claimant with GAF scores of 55, which suggested only moderate symptoms. Dr. Desai found that the claimant had normal evaluations with logical thought process and fair social judgment. The claimant also consistently noted that she felt pretty good with her medications (citing Tr. at 253, 255-58, 377-78, 380, 382, 384, 413, 415, 417, 419, 1928, 1930, 1932, 1934, 1937-38, 1940, 1942, 1944, 1946, 1948, 1950, 1952, 1954, 1956, 1958, 1960, 1962, 1964, 1966). As such, the undersigned notes that Dr. Desai's own treatment notes do not support the severity of the mental source statements. The claimant's own Function Reports do not support any further limitations in her ability to socialize, follow instructions, handle stress or concentrate. The claimant stated that she had no problems getting along with others and she could follow written instructions (citing Tr. at 164-71, 187-94).

Tr. at 604.

The ALJ's analysis is focused solely on the consistency of Dr. Desai's opinion with his own treatment records and in relation to two function reports that Plaintiff completed.

To begin, on June 18, 2012, Dr. Desai opined that Plaintiff had both "moderate" and "marked" limitations, whereas on August 29, 2013, Dr. Desai opined that Plaintiff had mostly "marked" limitations. Tr. at 402-04, 425-27, 868. The ALJ, in both his initial and subsequent decisions, discredited the opinion of Dr. Desai by referring to his treatment notes and his use of the term "moderate" and how that was inconsistent with his subsequent opinions. *Id.* at 20, 604. This reference

to the term "moderate" within the treatment notes accompanies Dr. Desai's Axis I diagnosis of Plaintiff, specifically as having "Major Depressive Disorder, Recurrent, Moderate, 296.32[7]." *E.g., id.* at 253.

In finding that the ALJ failed to articulate "good reasons" for affording less than controlling weight to Dr. Desai's opinions in his initial decision, the prior magistrate judge's report and recommendation, which the District Court adopted, included a discussion of the problems with the ALJ's treatment of Dr. Desai's use of the term "moderate." *Blanton I*, at 733-734. Specifically, the magistrate judge stated the following:

> As pointed out by plaintiff, Dr. Desai was not hired by Social Security and there is no assumption that he is familiar with the definitions used by Social Security or how the agency defines "moderate" (citing 20 C.F.R. § 404.1527(e)(2)(I)). Thus, the fact that Dr. Desai's notes describe plaintiff's depression as "moderate" does not necessarily contradict his opinion as to the limitations stated in his August 29, 2013 opinion, most of which indicated "marked" limitations in various spheres. Dr. Desai diagnosed plaintiff with two Axis I conditions, Major Depressive Disorder and Pain Disorder Associated With Psychological Factors and a Medical Condition. The ALJ does not address both of these conditions in his decision but instead focuses on the fact that plaintiff's depression was stated as "moderate" in Dr. Desai's notes. He never seems to have considered whether the treatment notes and the evaluation report could be reconciled.

*Id.* Here, the ALJ again failed to analyze Dr. Desai's use of the term "moderate" in the context of his specific diagnosis of Plaintiff, as the prior magistrate judge suggested. *See* Tr. at 604. Rather, the ALJ repeated the same error and stated that Dr. Desai indicated that Plaintiff "suffered from only moderate depression." *Id.* This characterization of Plaintiff's depression is misleading because the ALJ again failed to mention Dr. Desai's official diagnosis of "Major Depressive Disorder" and any analysis thereof. Therefore, it is not established what "moderate" means within either the context of Dr. Desai's diagnosis or in the ALJ's use of the term.

Furthermore, when a medical opinion is not given controlling weight, an ALJ will weigh medical opinions by considering several factors, including the examining relationship, the length of

---

[7] Dr. Desai's notes include the specific diagnosis code, 296.32, of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5") and the official name of this diagnosis, including the term "moderate." A comparison of the meaning of this specific diagnosis and its terminology with the Social Security Administration's definitions of "moderate" and "marked" limitations would have been helpful in supporting the ALJ's conclusions.

the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other relevant factors the ALJ is made aware of. *See* 20 C.F.R. § 404.1527(c)(1)-(6). As mentioned earlier, the ALJ is not required to conduct an exhaustive factor-by-factor analysis. *Francis*, 414 F. App'x at 804.

In the instant case, the ALJ gave "little weight to the opinions of Dr. Desai, as they are inconsistent with the record, including his own treatment record." Tr. at 604. The ALJ provided no clear discussion on any of the other factors mentioned in the Social Security Regulations. *Id.* The prior Magistrate Judge also discussed this in his report and recommendation: "In rejecting the opinion of Dr. Desai, the ALJ does not appear to take into account the length of the treatment and frequency of the treatment relationship or the consistency of the opinion with the record as a whole." *Blanton I*, at 734. In the decision before this Court for review, the ALJ reasoned that Dr. Desai repeatedly indicated that plaintiff only suffered from "moderate" depression and assessed Plaintiff with GAF scores of 55, which suggested only moderate symptoms.  Both of these reasons were included in the ALJ's initial decision and the District Court found they did not constitute "good reasons." *See* Tr. at 20, 604; *Blanton I*, at 733-34. However, in his subsequent decision, the ALJ added that Dr. Desai found that Plaintiff had normal evaluations with logical thought process and fair social judgment, and she consistently reported feeling "pretty good" with her medications. Tr. at 604. The ALJ then cited to Plaintiff's two function reports.

To start, the ALJ's reliance on the two function reports should not have much, if any, bearing on the weight to give to the opinion of Dr. Desai. As the two reports are inconsistent with each other and only appear to discredit the Plaintiff's own credibility. For example, in the first function report, dated July 13, 2012, Plaintiff stated that she does not spend time with others; she has problems getting along with family, friends, neighbors, or others; she can follow written instructions "pretty good"; and her ability to handle changes in routine is "not good at all." Tr. at 168-70. In the second function report, dated November 13, 2012, Plaintiff reported that she does spend time with others several times a month; she does not have any problems getting along with family, friends, neighbors, or others; she does not follow written instructions; and regarding her ability to handle changes in routine, she "go[es] with the flow." *Id.* at 191-93.

17

In addition, the ALJ relied on the function reports as evidence that Plaintiff has no further limitations in her ability to socialize, follow instructions, handle stress, concentrate, as well as evidence of having no problems getting along with others and that she could follow written instructions. Tr. at 604. As previously discussed, Plaintiff's reports regarding following written instructions and getting along with others is inconsistent. Also, she specifically reported that she is very nervous and cannot be around many people for more than about 5 minutes. *Id.* at 170. She further stated that she "do[es] not work well with others, as in can't be around more than 3 people or get very paranoid, feel fear." *Id.* at 187. When describing changes in social activities, she wrote, "fear is a big problem. A bunch of people I can't handle–like more than 3 I go into my own world." *Id.* at 192. However, in both reports, she stated that she can get along well with authority figures. *Id.* at 170, 193. Therefore, not only are Plaintiff's function reports inconsistent with each other, but they actually appear to indicate problems in social functioning, which is the opposite of what the ALJ concluded. *See id.* at 604.

Moreover, the ALJ's reasons regarding normal evaluation findings and Plaintiff's reports of feeling "pretty good" do begin to constitute "good reasons." To be able to affirm the ALJ's decision on this basis, it must meet the substantial evidence standard, discussed above. Substantial evidence must be "more than a scintilla of evidence but less than a preponderance," and it must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citing *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed.Appx. 516, 522 (6th Cir. 2008)). Accordingly, the undersigned recommends that the Court find that these reasons alone, especially in light of Plaintiff's substantial medical history, fail to meet the substantial evidence standard.

For the above reasons, the undersigned recommends that the Court find that the ALJ failed to give good reasons for affording less than controlling weight to the opinion of Dr. Desai and, consequently, the ALJ's reasons are not supported by substantial evidence.

### C. OPINION OF TREATING PHYSICIAN, DR. SINGH

Plaintiff also asserts that the ALJ failed to provide good reasons for not affording controlling weight to Dr. Singh's opinions. ECF Dkt. #12 at 12-15. Specifically, Plaintiff reasons that (1) the ALJ

improperly relied on Dr. Singh's use of the term "moderate" for the same reasons discussed in the analysis of Dr. Desai's opinion above; (2) the ALJ's reliance on certain inconsistencies in Dr. Singh's treatment notes are not "good reasons" because her record as a whole shows longstanding complications; and (3) the ALJ failed to address the deficiencies pointed out by the prior Magistrate Judge, specifically by not discussing the length and frequency of the treatment relationship and the consistency of the opinion with the record as a whole. *Id.* at 13-15.

In relevant part, the ALJ stated the following:

> Dr. Singh completed a medical source statement in June 2012 [and] found that the claimant would be extremely limited in her ability to bend, handle, and perform repetitive movements. Dr. Singh indicated that the claimant could only sit or stand/walk for 1-2 hours at a time (citing Tr. at 870-71). Dr. Singh completed a medical source statement in June 2013 indicating that the claimant could sit, stand or walk around 4 hours a day and would miss 5 days of work a week. Dr. Singh noted that the claimant had headaches, which occur 2-3 times a day during which she had to rest (citing Tr. at 399-401). The undersigned gives little weight to these opinions of Dr. Singh, as they are inconsistent with the record. In particular, the opinions are inconsistent with Dr. Singh's own treatment notes showing that her pain only moderately limited her activities of daily living (citing Tr. at 504). The claimant also denied on several occasions that she had any back pain, joint erythema, joint swelling, neck pain, and stiffness (citing Tr. at 508, 516, 522, 538, 1025, 1032, 1045). At other visits, the claimant complained of some back pain and arthralgia(s) but she denied any joint erythema, swelling, neck pain or stiffness (citing Tr. at 511, 513, 518, 526, 530, 534). The lack of ability to sit, stand or walk is also inconsistent with the claimant's diagnostic findings showing only mild to no degenerative changes at all. The undersigned notes that the claimant had normal x-rays and MRIs of her lumbar spine with her right knee MRI showing only mild, early osteoarthritis (citing Tr. at 409-10, 499, 502, 872, 1181, 1210). Dr. Mehta noted as well that the claimant's fibromyalgia pain was out of proportion to the physical findings (citing Tr. at 1193-94). The claimant's lack of ability to complete an 8-hour workday and miss work is also inconsistent with the clinical findings showing full strength in her extremities with a normal gait (citing Tr. at 1256, 1259, 1263, 1267, 1281, 1284, 1290, 1619, 1624, 1839, 1843, 1857, 1863, 1889, 1915, 2274, 2280-81, 2300, 2306, 2314).
>
> Dr. Singh opined in June 2013 that the claimant was unemployable (citing Tr. at 532). The undersigned gives little weight to the opinion, as it is inconsistent with the record. The undersigned notes that a finding of disability is reserved to the Commissioner pursuant to the Regulations, and Dr. Singh failed to provide any specific limitations. In addition, Dr. Singh noted that the claimant's fibromyalgia only moderately limited her activity (citing Tr. at 504-06). Dr. Singh then indicated in September 2016 that the claimant was permanently unable to work due to her condition (citing Tr. at 1717). The undersigned gives little weight to this opinion, as it is inconsistent with the record. Pursuant to the Regulations, a finding of disability is reserved to the Commissioner as well as Dr. Singh failed to provide any specific limitations. The undersigned notes that Dr. Sanhaji provided the claimant with care in 2016, and she admitted to significant improvement in her pain with injections (citing Tr. at 1753-58, 1768-74, 1802, 1804-10).

Tr. at 603-04.

Although the ALJ's second decision adheres to some extent to the prior remand order, the undersigned still questions the ALJ's compliance with that order and the sufficiency of his analysis, as will be discussed. Ultimately, several considerations lead the undersigned to recommend that the Court also remand the instant case for the ALJ to reconsider Dr. Singh's opinions.

The first issue that concerns the undersigned is the ALJ's compliance with the remand order because the ALJ repeated the same error regarding reliance upon the use of the term "moderate" that he applied to the opinions of both Dr. Desai and Dr. Singh.  Tr. at 603. Dr. Singh used the term "moderate" in a single record of his treatment notes. *Id.* at 504. He stated that Plaintiff's complaint of myalgias "moderately limits activities," and her complaint of depression "moderately limits activities unable to concentrate, loses temper easily, is emotional." *Id.* However, in Dr. Singh's other treatment notes from this same period of 2012 to 2013, he described her myalgias and depression more often as chronic and ongoing. *See id.* at 510, 517, 525, 529, 533. The ALJ recognized that Dr. Singh did not fill out a RFC Questionnaire, and, thus, he did not provide specific limitations. *Id.* at 603. Yet, the ALJ used one treatment note to suggest that Dr. Singh opined that Plaintiff had "only moderately limited her activity," and took this term out of context to apply it in the Social Security RFC context. *Id.* A "mischaracterization of the record cannot be a 'good reason.'" *See Wilson v. Colvin*, 213 F.Supp.3d 478, 485 (W.D. NY 2016).

The prior magistrate judge's analysis of the term "moderate" was only focused on Dr. Desai's opinion because the ALJ only included it in his initial analysis of Dr. Desai and did not use this term to support his initial analysis about Dr. Singh. *Blanton I*, at 733-34; Tr. at 20-21. Nevertheless, the prior magistrate judge's reasoning applies here as well. For example, like Dr. Desai, Dr. Singh was not hired by the Social Security Administration, and there is no assumption that he is familiar with the definitions used by that agency or how it defines "moderate." *See Blanton I*, at 733-34. Therefore, Dr. Singh's use of the term "moderate" in one of his treatment notes does not necessarily contradict his opinions, and the ALJ did not seem to consider whether the treatment notes and opinions could be reconciled. *Id.* Also, the "Sixth Circuit Court of Appeals has repeatedly recognized that fibromyalgia can be a severe and disabling impairment." *Blanton I*, at 732 (internal citations omitted). But, "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients

20

present no objectively alarming signs." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Therefore, a one-time description of Plaintiff's symptoms as "moderate," must be considered in context. Without more support in the ALJ's analysis, it was insufficient to count as a "good reason" to discredit Dr. Singh's opinions.

Aside from the repeated misplaced reliance on the term "moderate," the ALJ's analysis about Dr. Singh's opinion is more extensive than before and includes objective medical evidence, such as references to Plaintiff's X-rays, MRI scans, physical examinations, and notes from other doctors. Tr. at 603-04. The ALJ's analysis of Dr. Singh's opinions focused on the consistency factor of 20 C.F.R. § 404.1527(c)(4) in relation to Dr. Singh's own treatment notes and with the record as a whole. Tr. at 603. However, an ALJ may not "cherry-pick" certain portions of the medical record to discredit a Plaintiff's complaints. *See Minor v. Comm'r of Soc. Sec.*, 513 Fed.Appx. 417, 435 (6th Cir. 2013); *Majeed v. Comm'r of Soc. Sec.*, No. 1:16CV2519, 2017 WL 5952878, at *6 (N.D. Ohio Oct. 12, 2017), *report and recommendation adopted sub nom. Majeed v. Comm'r of Soc. Sec. Admin.*, No. 1:16 CV 2519, 2017 WL 5901023 (N.D. Ohio Nov. 30, 2017) ("An ALJ cannot simply pick and choose evidence in the record, relying on some and ignoring others, without offering some rationale for his decision") (internal citations omitted).

Plaintiff correctly points out that there is some evidence of consistencies within the record as well, for example, regular documentation from 2002 to 2012 regarding migraine headaches. ECF Dkt. #12, at 14-15; *e.g.*, *Tr.* at 265-66, 272-76, 278, 283-85, 290, 295, 301, 304-05, 309, 311-13, 320-22, 324-25, 504, 507, 512, 525, 529, 537. Also, Plaintiff was admitted to the hospital on several occasions due to severe migraines. ECF Dkt. #12 at 14; Tr. at 225-30, 366-71, 389-98, 2270. Another example of consistency in the record that Plaintiff referenced, and which the undersigned finds unpersuasive, involves longstanding complications with her knees. ECF Dkt. #12 at 14; Tr. at 212-16. The ALJ in his second decision actually stated that "[a]s for the claimant's knees, there is [a] somewhat regular case." Tr. at 600. The ALJ subsequently discussed the treatment that Plaintiff received for her knees, but her treatment was primarily with Drs. Fritz, Steiner, Mehta, and Sanhaji. *Id.* at 600-01. Dr. Singh's only apparent involvement with Plaintiff's knee problems was that he ordered an MRI of her left knee in March 2010 after a fall injury from the prior month. *See* Tr. at 212-

19, 286-88. Furthermore, Plaintiff broadly pointed out that Dr. Singh's treatment notes consistently document ongoing problems with myalgia, depression, anxiety, insomnia, numbness, tearfulness, dizziness, weakness, tenderness, positive straight leg raises bilaterally, back pain, shoulder pain, right foot pain, and joint pain. ECF Dkt. # 12 at 15; *See* Tr. at 259-325, 429-30, 504-540. Despite the fact that certain consistencies exist and tend to weaken the ALJ's conclusion that Dr. Singh's opinions should only be afforded "little weight," they do not completely negate the fact that the ALJ adequately supported his conclusion regarding the factor of inconsistency. Thus, the consistency factor was the only clear factor the ALJ relied on, and it is weakened by the ALJ's faulty reliance on the term "moderate" as well as evidence in the record of some consistencies, as discussed above. By relying on a single factor, the strength of that factor should be evident so that the ALJ's explanation is "sufficiently specific to make clear" the reasons for the weight he afforded to the treating source's medical opinion. SSR 96-2P, at *5. The Commissioner pointed to three cases from the Sixth Circuit to support the ALJ's decision to give less than controlling weight to Dr. Singh's opinion. *See* ECF Dkt. #16 at 15-16 (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640 (6th Cir. 2006) (en banc); *Price v. Comm'r Soc. Sec. Admin.*, 342 Fed.Appx. 172 (6th Cir. 2009)). Each of these cases upheld the ALJ's decision to afford less than controlling weight to the opinions of treating physicians because the opinions were (1) inconsistent with that physician's own prior assessments or treatment notes; (2) inconsistent with other evidence in the record, such as from other reviewing physicians; and (3) consisted of conclusory statements not supported by objective medical evidence. *White*, 572 F.3d at 286; *Combs*, 459 F.3d at 652; *Price*, 342 Fed.Appx. at 175-76. In the instant case, the ALJ focused on the first two reasons above–inconsistencies in the record and with Dr. Singh's own treatment notes. Tr. at 603. The ALJ also appears to weave in the § 1527(c)(3) supportability factor, but there is no express argument or finding that Dr. Singh's opinions are "conclusory" and not supported by objective medical evidence.

The second main reason that the undersigned questions the ALJ's compliance with the remand order is his failure to address certain other deficiencies explicitly pointed out in the report and recommendation. The prior Magistrate Judge specifically remanded the ALJ's decision due, in part, because he did not articulate goods reasons for failing to assign controlling weight to Dr. Singh's

22

opinion. *Blanton I*, at 731-33. In the report and recommendation, the Magistrate Judge specifically articulated that the ALJ failed to discuss the length of the treatment, frequency of the treatment relationship, or the consistency of the opinion with the record as a whole. *Id.* at 733. As previously established, an ALJ is not required to conduct an exhaustive factor-by-factor analysis as long as he considers all of the factors. *Francis v. Comm'r of Soc. Sec.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011); 20 C.F.R. § 404.1527(c). Although the ALJ in the instant case did address consistency, there were still some problems in this analysis, as already established. Also, the ALJ failed to address any other factor cited in the prior report and recommendation, despite having notice thereof. Such noncompliance with the remand order regarding the "moderate" analysis and his failure discuss the factors specifically mentioned in the prior report and recommendation gives the undersigned reason to question the ALJ's full compliance, including with the Social Security Administration's own procedural requirements of fully considering all of the factors of § 404.1527(c).

Finally, given that the undersigned has already recommended that the instant case be remanded due to insufficient "good reasons" regarding Dr. Desai's opinion, the undersigned recommends that the Court order the ALJ to develop the record more fully with regard to Dr. Singh's opinion as well.

### D.    HARMLESS ERROR

The Sixth Circuit has stated that even if there is a violation of the procedural requirements of 20 C.F.R. § 404.1527(c)(2), such a violation may constitute harmless error. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (§ 1527(d)(2) was a prior version of § 404.1527(c)(2)). The Court listed several examples of when harmless error may occur, including: (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," or (3) "the Commissioner has met the goal of [§ 404.1527(c)(2)]–the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.* Regarding the third example, "the ALJ could have met the goal of providing good reasons" by indirectly attacking either the "supportability" or the "consistency" of the doctor's opinion with the

record as a whole by either the ALJ's analysis of the doctor's other opinions or his analysis of the claimant's ailments in general. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed.Appx. 462, 470 (6th Cir. 2006) (quoting *Hall v. Comm'r of Soc. Sec.*, 148 Fed.Appx. 456, 464 (6th Cir. 2005); *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010).

The undersigned recommends that the Court find that harmless error does not negate a remand based upon the treating physicians' opinions. The prior report and recommendation also discussed the "harmless error" rule and stated in relevant part:

> Here, the treating physicians had significant, ongoing relationships with plaintiff and their opinions were not so patently deficient that the Commissioners could not rely on them. Thus, the ALJ's failure to provide sufficiently specific "good reasons" for discounting the opinions of Dr. Singh and Dr. Desai was not harmless error. Although there may have been good reasons to reject their opinions, the ALJ failed to articulate those reasons with sufficient specificity so as to allow for meaningful review.

*Blanton I*, at 735.

As recommended above, the ALJ's analysis with regard to Dr. Desai again failed to provide "good reasons" for discrediting his opinions. Despite the problems the undersigned finds with the ALJ's analysis of Dr. Singh's opinions, the rejection of Dr. Singh's opinion would prove a stronger candidate to qualify as a harmless error. However, given that the undersigned recommends the Court to remand on the basis of Dr. Desai's opinions and given the fact that the ALJ did not specifically comply with the remand order with regard to Dr. Singh's opinions, the undersigned recommends that the Court also order the ALJ to more fully develop the record and his analysis with regard to Dr. Singh's opinions.


## VII.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court find that the ALJ failed to provide good reasons for affording less than controlling weight to the opinions of Dr. Desai and that these reasons are consequently not supported by substantial evidence. The undersigned also recommends that the Court remand this case so that the ALJ can develop the record and provide a more thorough analysis with regard to Dr. Singh's opinions. As such, the undersigned recommends

that the Court VACATE the ALJ's decision and REMAND the instant case for further proceedings consistent with this Report and Recommendation.


Date: August 8, 2019                              */s/George J. Limbert*
                                                  GEORGE J. LIMBERT
                                                  UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).